[No. 8159. Department One. September 25, 1909.]

OSCAR CAIN *et al.*, *Appellants*, v. MILES C. MOORE, *Respondent*.[1]

ATTORNEY AND CLIENT—EMPLOYMENT—CONSTRUCTION OF CONTRACT —COLLECTION OR COMPROMISE—PERFORMANCE—EVIDENCE. Where attorneys are employed by a stockholder in a bank to bring action against the bank for an accounting for alleged undivided profits, under an agreement that the client would pay them ten per cent on the amount collected "in case of a compromise" of the suit, and not to exceed $200 "in case of settlement by sale or exchange of the stock," and after suit brought, it was dismissed by the client upon receiving $14,833 in cash and certain shares in another bank in exchange for his shares, the attorneys, in an action for their services, are entitled to show that the market value of the shares received was equal to the market value of the shares exchanged, and that the transaction was in fact a compromise of the suit by a cash payment, within the meaning of their contract of employment, entitling them to ten per cent of the collection.

[1]Reported in 103 Pac. 1130.

SAME—LIABILITY—FRAUD. In such a case, it would not be necessary for the attorneys to plead or prove fraud on the part of their client.

SAME—EVIDENCE—NATURE OF COLLECTION—VALUE OF STOCK EXCHANGED. To determine whether or not the client collected a pecuniary consideration on the compromise, over and above the value of the stock given in exchange, the stock must be taken at its market value and not at its actual value by reason of the undivided profits to collect which the suit was instituted.

ESTOPPEL—RETENTION OF CHECK. The retention for a few days of a check given as payment in full to attorneys upon the client's statement of the case, until the attorneys could ascertain the nature of the settlement, will not estop them from bringing action for a larger sum due them on their contract of employment by reason of the nature of the settlement.

EVIDENCE — CONTRACTS — AMBIGUITY — EXTRANEOUS EVIDENCE. A contract to pay attorneys ten per cent of any sum collected "in case of a compromise" and not to exceed $200 "in case of a settlement by sale or exchange of stock," is not so ambiguous as to admit of explanation by what the client said at the time such clause was added as an amendment to the original contract.

Appeal from a judgment of the superior court for Walla Walla county, Brents, J., entered December 11, 1908, in favor of the defendant by direction of the court, after sustaining a challenge to the evidence, in an action on contract. Reversed.

*Dunphy, Evans & Garrecht,* for appellants.
*T. P. & C. C. Gose,* for respondent.

FULLERTON, J.—In August, 1908, the respondent was the owner of thirty-five shares of the capital stock of the First National Bank of Walla Walla. At that time he conceived the idea that the bank had made large earnings which had not been properly accounted for, and that, upon a proper accounting, a large sum would be found to be due him in virtue of his ownership of the shares of stock mentioned. He was desirous of bringing an action to procure such an accounting, and to that end employed the appellants as attorneys for that purpose. The contract of employment was reduced

to writing, and is in the form of a letter from the attorneys addressed to the respondent, the material parts thereof being as follows:

"In regard to your suit against the First National Bank and others we agree to prosecute the case upon the following terms: In case the matter proceeds to trial and we recover nothing, we will charge you $200. On any sum recovered less than $5,000 we will charge you 20 per cent and 5 per cent on any additional amount. In case of a compromise we will charge you 10 per cent of the amount paid you. In case of settlement by sale or exchange of stock not to exceed $200."

After the contract had been entered into, an action was begun by the respondent, through the appellants as his counsel, whereupon one W. P. Winans, a director of the First National Bank, approached the respondent with a view to settling the action without the necessity of a trial. After several interviews he asked the respondent to make a proposition for settlement, and thereupon the respondent offered to exchange his thirty-five shares of stock in the First National Bank, at a valuation of nine hundred dollars per share, for thirty-three and one-third shares of stock in the Baker-Boyer National Bank of Walla Walla, at a valuation of five hundred dollars per share, and take the difference in money. This proposition was accepted, and shortly thereafter, through Mr. Winans and another representative of the bank, an exchange of the stock was made, the respondent assigning his shares of stock to the Kirkman Investment Company, of which Mr. Winans was president, and receiving therefrom the shares of stock in the Baker-Boyer National Bank, and $14,-833.34 in the form of a certified check drawn by the Kirkman Investment Company on the First National Bank. At the same time the respondent gave to the bank's representatives the following receipt:

"Received of the Kirkman Investment Company the sum of Thirty-One Thousand Five Hundred ($31,500) Dollars in full payment for thirty-five shares of stock in the First National Bank of Walla Walla, and in full settlement of all

claims and demands, against the said First National Bank of Walla Walla, against any and all of its funds and accounts, and against any and all of its officers and employes."

Thereafter the respondent directed the appellants to dismiss the suit against the bank, at the same time sending them his check for two hundred dollars. The appellants dismissed the action as directed, and kept the check until they learned the terms and conditions on which the action had been settled, when they returned the check to the respondent and demanded the sum of $1,400, claiming the amount as due them under that clause of the contract relating to a compromise of the action against the bank. This demand being refused, they began the present action to recover the sum demanded.

On the trial, the foregoing facts appearing, the appellants sought to show that the exchange of stock made by the respondent with the representatives of the bank was in reality a compromise of his suit against the bank; that the market value of the stock he received in exchange for the stock he held in the First National Bank was practically of the same value as the stock exchanged for it, and that the sum paid in cash, although nominally paid by the Kirkman Investment Company, was actually paid by the First National Bank, and was paid by it in settlement of the action brought against it, and for no other consideration. It having appeared in the record that the contract as originally submitted did not contain the clause with reference to a sale and exchange of stock, and that this clause was added at the respondent's request, he stating at the time his reason for making the request, the appellants further offered to show the reason given by the respondent for desiring the contract changed. The court denied the several offers of proof, and ruled, as a matter of law, that the transaction between the respondent and the representatives of the bank was an exchange and sale of stock within the meaning of the last clause of the contract, and that the appellants were entitled to only the sum named therein as attorney's fees. The appellants then rested their case,

whereupon the court sustained a challenge to the sufficiency of the evidence, and directed judgment for the respondent.

The court, in making the several rulings above recited, seems to have been of the opinion that it was not competent for the appellants to question the nature of the transaction between the respondent and the persons with whom he settled his controversy with the bank; that they were obligated to accept those proceedings at what they purported to be upon their face, and were not permitted to inquire into their real nature. This interpretation of the contract between the parties we hardly think is tenable. The contract itself, when read as a whole, is not obscure. Its obvious meaning is that the respondent was to pay nothing in excess of two hundred dollars as attorney's fees in case he obtained no pecuniary advantage by reason of the action brought against the bank; that if the action proceeded to trial and nothing was recovered, or if the respondent should sell or exchange his shares of stock in the bank and receive no pecuniary advantage thereby, then two hundred dollars was to be the gross sum he was required to pay the appellants as attorney's fees. On the other hand, if anything was recovered after trying out the action, or if the respondent compromised the case and received a pecuniary consideration over and above the market value of the property he gave up in the compromise, the appellants were to recover a per centum of that value.

Within this view of the contract, it was competent for the appellants to show, if they could, that the value the respondent received for the stock in the sale and exchange was in excess of the value he gave for the property. It would be some proof of this fact to show the market values of the stock exchanged, that the Kirkman Investment Company, who apparently purchased the stock, paid no part or only a part of the cash difference given in the exchange, and that this sum, or some part of it, was paid by the First National Bank in compromise of the suit the respondent had instituted against

it. The appellants were not required to plead and prove fraud on the part of the respondent in order to be permitted to show these matters. The intent of the respondent is not material. If the facts sought to be proven exist, the appellants are entitled to recover, no matter what the respondent's purpose may have been. He is liable to the appellants for the per centum agreed to be paid, if he in fact received in the sale or exchange made with the representatives of the bank a sum in excess of the value of the stock exchanged, and this, whether he made the exchange with the Kirkman Investment Company or with the First National Bank.

We think, also, that in determining whether the respondent received a pecuniary consideration over and above the value of the stock he gave up in the exchange, the market value of the stock must be taken as its actual value. It is true the respondent believed that there were large sums earned by the bank which had been retained by it, and that the actual value of the stock was in excess of its apparent or market value, and consequently believed that the actual value of his stock was greatly in excess of its market value. But this excess was the subject-matter of the action against the bank. It was this he brought the action to recover, and it was a per centum of this sum he agreed to pay as attorney's fees in case of a recovery, and he cannot escape his agreement by showing that he gave the stock in exchange at a value based upon the existence of the undivided earnings.

The appellants are not estopped from maintaining this action by the fact that they failed to return the check for several days after it had been sent them with notice that the respondent had settled the action against the bank. If they were obliged to return it at all, they had a reasonable time in which to inquire into the facts of the settlement, and it is not in evidence here that there was any abuse of this right.

The evidence offered tending to show what was said by the respondent when the written contract was amended was prop-

erly rejected. The contract is not ambiguous, and extraneous evidence is not required to explain its meaning.

For the errors noticed the judgment appealed from is reversed, and a new trial awarded.

RUDKIN, C. J., CHADWICK, GOSE, and MORRIS, JJ., concur.